IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RESPIRONICS, INC. | ) | Civil Division |
| | ) | |
| *Plaintiff,* | ) | Case No. 2:13-cv-00349-CB |
| | ) | |
| Vs. | ) | Judge Cathy Bissoon |
| | ) | |
| UNIVERSITY TECHNOLOGIES | ) | |
| INTERNATIONAL, INC., | ) | |
| | ) | |
| *Defendant.* | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

### I.      INTRODUCTION

The Complaint is a pre-emptive declaratory judgment attack by which Plaintiff seeks to avoid both the more appropriate Canadian Court forum for the resolution of the parties' Canadian law-governed contract dispute and also a more direct and comprehensive breach of contract money damages award remedy for University Technologies International, Inc. ("UTI") in a Canadian Court.  Plaintiff's forum shopping is improper, and its Complaint should be dismissed.

UTI is a Canadian corporation headquartered in Calgary, Alberta whose activities include the transfer and commercialization of technology developed at the University of Calgary.  In 2001, it entered into an Amended and Restated License Agreement and Asset Purchase Agreement (the "Agreement"), effective January 1, 2001, with Plaintiff Respironics, Inc. ("Respironics" or "Plaintiff"), which the parties agreed was governed by Alberta law, relating to technology and products known as "CPAP" and "Auto CPAP" developed in Alberta by a former University of Calgary professor.  The dollar amounts of payments owed to UTI are calculated by Plaintiff based on its sales information.  In August 2012, UTI engaged an independent Auditor to review payments made by Respironics for the then most recent four year period (2008-2011)

under the Agreement relating to its sale of products involving the licensed technology (the "Royalties"). The Auditor concluded that Plaintiff had under-reported and underpaid the amounts due by approximately $11 million.

UTI sent the Auditor's findings to Plaintiff in December 2012. The next Royalties payment by Plaintiff was due on March 30, 2013 with respect to the July-December 2012 period (the "2012 Royalties Payment"). In January 2013, after receiving the Auditor's report, Respironics alleged for the first time that it supposedly had actually overpaid Royalties. The parties met on March 4, 2013 to discuss the Auditor's findings. At that meeting, Plaintiff reiterated its allegation that it had overpaid Royalties to UTI. UTI requested evidence supporting Respironics' contentions but Respironics refused to provide the requested evidence. Neither then nor at any other time has Plaintiff claimed that UTI was responsible for Plaintiff's alleged miscalculation of the Royalties payments.

The March 4th meeting concluded without resolution of the Auditor's findings or Plaintiff's bald assertion of supposed overpayments. Plaintiff did not inform UTI at the meeting or otherwise that it intended to file a lawsuit nor was there any indication by Plaintiff that a filing was imminent. However, four days later, on March 8, 2013, without advance warning, Plaintiff filed its Complaint commencing the instant action.

The facts speak volumes as to Plaintiff's gamesmanship. Faced with evidence of its multi-million dollar breach of contract and with its next contractual Royalties payment looming, Plaintiff constructed an overpayment scenario based on its own prior payment calculations and without providing supporting details and then filed its preemptive action in an effort to secure its preferred home forum. UTI, however, has done nothing wrong and the only contract breach (or even alleged contract breach) involved is that of Plaintiff. Plaintiff's Complaint reflects that

2

undeniable reality. It does not contain any breach of contract claims on which this Court can grant full and comprehensive relief and a money judgment. Instead, the Complaint is for declaratory relief only as related to past and future performance under the Agreement and for nebulous and inadequately pled refund-type equitable relief related to Plaintiff's supposed miscalculation of its prior Royalties payments.

Despite its rush to file its Complaint, Plaintiff failed to serve UTI with its Complaint and Summons in this action by the 120-day deadline from the March 8, 2013 Complaint filing date (which Plaintiff has calculated as having expired on July 5th). UTI then filed its own action against Plaintiff in the applicable Canadian court of competent jurisdiction, the Court of Queen's Bench of the Province of Alberta (the "Canadian Court"), at Court File Number 1301-08486 (the "Canadian Action") on July 16, 2013. UTI effected service of process in the Canadian Action on Plaintiff on the following day, July 17th. UTI's Statement of Claim in the Canadian Action covers all matters raised by Plaintiff's Complaint in this action, raises additional claims including Plaintiff's contract breach for failure to make the 2012 Royalties Payment that subsequently became due and owing on March 30, 2013, and presents breach of contract claims against Plaintiff on which the Canadian Court in the Canadian Action can issue comprehensive relief.

Under the circumstances, this action should be dismissed in favor of the pending Canadian Action. Alberta, Canada is the more appropriate forum. Separately, the Complaint should be dismissed due to Plaintiff's failure to effect timely service. In the event this Court ultimately was to decide to retain jurisdiction over Plaintiff's Complaint, significant portions of its declaratory judgment Count are premature and not ripe for adjudication and should be dismissed. Moreover, other claims do not satisfy federal pleading standards and likewise should be dismissed or, at a minimum, re-pled with sufficient specificity.

## II.    BACKGROUND

### A.    The Parties' Relationship and the Agreement

The Agreement provides Plaintiff with a license for technology and products relating to "CPAP," the providing of continuous positive air pressure to the airway of a sleeping patient in order to keep the airway open and prevent sleep apnea, snoring or other breathing difficulty, and also "Auto CPAP," the providing of the minimum such air pressure necessary to keep the airway open. *See generally,* Agreement.

Prior to executing the Agreement, the parties engaged in extensive negotiations both in and outside of Canada. Porter Can. Aff. ¶ 29(b). UTI executed the Agreement in Alberta and performed its duties and obligations in Alberta. *Id.* at ¶¶ 29(c)-(g). The confidential and proprietary information that is the subject of the Agreement was developed and maintained in Alberta. *Id.* at ¶ 29(h). The Agreement also contemplated that UTI might develop additional technology in Alberta and that Plaintiff would have the right to visit and witness any new or improved processes, techniques, practices or designs relating to the Auto CPAP technology at the University of Calgary in Alberta. *See* Agreement ¶ 9.1(iv). The Agreement includes the parties' express commitment and designation that it "is governed by the laws of the Province of Alberta." *Id*. at ¶ 18.1. Moreover, the parties agreed that certain disputes arising under the Agreement would be subject to binding arbitration under the Arbitration Act of the Province of Alberta. *Id*. at ¶¶ 1.2; 8.2.

UTI does not have offices, employees or any regular business activities in any jurisdiction other than Alberta. Porter Can. Aff. ¶ 29(k). In contrast, Plaintiff regularly conducts

business in Alberta, including the marketing and sale of CPAP and Auto CPAP products at issue in this litigation. *Id.* at ¶ 26-27.

From the outset the parties understood that the Agreement included both patented and non-patented technologies. *See*, *e.g.*, Agreement ¶¶ 9.1 (i)-(iv). The Agreement specifically contemplates that UTI will be compensated for non-patented technology. The Agreement (¶ 8.1) states:

> If, during the term of this Agreement, UTI or [former University of Calgari profesor] Dr. Remmers, individually or with co-inventors, shall discover or invent an improvement (hereinafter called the "Improvement") to the Auto CPAP Technology, UTI agrees to promptly disclose to Respironics and furnish to Respironics all information pertaining thereto, including blueprints, sketches, drawings, designs, computer programs, and other data . . . . During the term of this Agreement, Respironics may use such Improvements as are discovered or invented by UTI or Dr. Remmers, individually or with co-inventors, only in conjunction with the Auto CPAP Technology, and only for the purposes contemplated by this Agreement. UTI shall promptly disclose to Respironics any Improvement upon the Auto CPAP Technology. To the extent such discovery or invention was invented or is owned, by assignment or otherwise, in whole or in part by UTI, UTI's rights therein shall be deemed to be part of the licensed subject matter for all purposes of this Agreement.

The fact that non-patented technology is a significant part of the Agreement also is memorialized in the parties' negotiated clause regarding the termination of the Agreement. Specifically, the parties agreed that the Agreement (¶ 16.0) shall not terminate until the technology, both patented and unpatented, is no longer used in Auto CPAP Products, as follows:

> Subject to sooner termination as provided in Section 16 of this Agreement, this Agreement shall be effective from the Effective Date and shall remain in full force and effect *until the last to occur of the following*: (i) the expiration of the last to expire of any Patents; (ii) the final rejection or abandonment of any pending Patent application; or (iii) such time as neither the Auto CPAP Technology *nor any Improvements of the foregoing are a material part of any product made or sold by Respironics*. (emphasis added).

The amount of Royalties due under the Agreement are calculated by Plaintiff based upon sales information and records under its control and with UTI relying on Plaintiff's calculations and reporting under the Agreement. In August 2012, UTI exercised its contractual audit rights under the Agreement and engaged a third party Auditor, Global Royalty Audits, Inc. (the "Auditor"), to conduct an audit of all Royalties payments and related reporting by Plaintiff to UTI for the period of January 1, 2008 to December 31, 2011. Porter Can. Aff. ¶ 4. The Auditor concluded that Plaintiff under-reported and underpaid Royalties in the amount of $10,947,240 (exclusive of interest). *Id.* at ¶ 5. The Auditor also reported that Plaintiff was evasive, combative and reluctant to produce certain necessary information as part of the audit. *Id.* UTI provided the Auditor's findings to Plaintiff in December 2012. Subsequently, in January 2013, Plaintiff informed UTI that it disagreed with the Auditor's conclusions and claimed that it had actually overpaid Royalties. *Id.*

The parties met on March 4, 2013 to discuss the audit. Porter W.D.Pa. Dec. ¶ 10. At the meeting, Plaintiff reiterated its allegation that it supposedly had overpaid Royalties, although Plaintiff provided no supporting evidence to UTI and made no assertion that UTI somehow was responsible for any supposed miscalculation or overpayment by Plaintiff. *Id.* at ¶¶ 11-12.

**B.     Plaintiff's W.D. Pa. Complaint**

Four days later, Plaintiff filed, without advance warning, its Complaint commencing this action. The Complaint has three Counts. Significantly, despite the entire Complaint being premised on the parties' Agreement, there is no Count for breach of contract and no allegation that UTI has failed to perform or otherwise has violated the Agreement. Instead, Count II seeks declarations as to how Royalties payments are to be calculated under the Agreement and also a declaration that no further Royalties payments are owed under the Agreement after the patent for

the Auto CPAP technology expires in July 2014. Notably, the Complaint is completely devoid of any mention or acknowledgment that Plaintiff's payments under the Agreement relate to *both* patented and *non-patented* technology. Counts I and III purport to set forth equitable claims for restitution/refund and unjust enrichment based upon Plaintiff's bald, cryptic and unsupported assertion that, for over ten years, it miscalculated certain unidentified prior Royalties payments in unidentified dollar amounts. Tellingly, the Complaint makes no assertion that UTI was responsible in any manner or extent for Plaintiff's supposed prior overpayments.

### C.    Plaintiff's Failure to Timely Serve Process In This Action

The Complaint was filed on March 8, 2013. Federal Rule of Civil Procedure 4(m) requires that the Complaint and Summons be served within 120 days, *i.e.*, by July 5, 2013. Plaintiff has filed on record a Certificate of Service (Docket No. 3) stating that the Complaint was mailed by Plaintiff to UTI by registered mail on June 27, 2013 (*i.e.*, not until just one week prior to the expiration of the 120-day deadline). The Certificate of Service, however, does not state that the mailing was received and signed for by UTI before July 5th. Indeed, it was not. Plaintiff also has filed on record a Proof of Service (Docket No. 4) that personal service was made on UTI in Calgary after the July 5th deadline, *i.e.*, on the afternoon of July 16, 2013. As discussed below and in the accompanying Declarations of Gail Watson and Michelle Rutter, such purported personal service was ineffective and untimely.

By way of background concerning Plaintiff's service efforts, on June 20, 2013, approximately 104 days after the March 8, 2013 Complaint filing date, Plaintiff sent an email to UTI, attaching a waiver of service in which it acknowledged it had 120 days (*i.e.*, until July 5, 2013) from the filing of the Complaint to serve UTI. Porter W.D.Pa. Dec. ¶ 18. Despite UTI's entitlement to 60 days under Rule 4(d)(1)(F) to consider and respond to such a request, Plaintiff's

email gave UTI just five days to decide whether to execute the waiver of service. *Id.* According to its above-referenced filed Certificate of Service, Plaintiff's counsel just two days later began the process for forwarding the Complaint by registered mail to UTI.[1]

Approximately three weeks later on July 19, 2013, *i.e.*, two weeks after expiration of the Rule 4(m) service deadline, Plaintiff filed in this action a Return of Service for the Complaint and Summons in which it claimed to have effected personal service on UTI in Calgary earlier that week on July 16, 2013. (Docket No. 3.) The Return of Service stated that Jessica Mercier left a copy of the Complaint and Summons "with a representative of University Technologies International, Inc. at its principal place of business in Calgary, Alberta, Canada at: 3553-31st Street N.W., Calgary, Alberta, Canada T2L 2K7." *Id.*

The Alastair Ross Technology Centre ("Centre") is the building at the street address referred to in Plaintiff's Return of Service. The Centre houses approximately forty technology companies, including UTI; an additional sixty corporate clients maintain their virtual offices at the Centre. Watson Dec. ¶¶ 2-3. There is a reception area in the main lobby of the Centre. The receptionist is an employee of Calgary Technologies, Inc., not UTI. The receptionist **does not** have authority to accept service of legal documents on behalf of tenants. *Id.* at ¶ 7. On the afternoon of July 16, 2013, the individual receptionist was Michelle Rutter, who was hired just a week earlier by Calgary Technologies, Inc. and employed as a Client Services Coordinator. Rutter Dec. ¶¶ 4-6. Ms. Rutter did not agree to nor purport to accept process on behalf of UTI from Plaintiff on July 16th. *Id.* at ¶¶ 11-13.

---

[1] While the return receipts for the registered mail have not been filed by Plaintiff with the Court, UTI acknowledges that the Complaint and Summons were received by it on July 19, 2013, fourteen days after expiration of the 120-day time period to serve the Complaint.

### D.    UTI's Comprehensive Canadian Action

After expiration of the 120-day deadline, without service being effected on it in this action, UTI filed a Statement of Claim against Plaintiff in the Court of Queen's Bench of Alberta commencing the Canadian Action.  Porter Can. Aff. ¶ 21.  The Statement of Claim (among other things) covers all matters raised by Plaintiff in its Complaint in this action but also is broader in scope.   For example, it includes breach of contract claims for money damages based on Plaintiff's wrongful failure to properly report and fully pay its 2012 Royalties Payment, Royalties for the pre-2008 time period, and also Royalties for the 2008-2011 time period covered by the Auditor's findings.   It also contains requests for other ancillary relief (including relating to the period after the future July 2014 expiration of UTI's patent) as discussed more fully in the Argument below.  (*See* Statement of Claim, Exhibit 6 to Porter Can. Aff.)  Prior to serving the Statement of Claim on Respironics, in accordance with Rule 11.25 of the *Alberta Rules of Court,* UTI sought and was granted permission by the Canadian Court to serve its Statement of Claim on Respironics in the United States, which declared itself "satisfied that UTI has a good arguable case" and acknowledged that there is "a real and substantial connection between Alberta and the facts on which the claims in this Action are based."  Porter W.D.Pa. Dec. ¶ 27.  Unlike Plaintiff, UTI proceeded diligently to ensure that its Statement of Claim in the Canadian Action was served on Plaintiff as soon as possible.  *Id.* at ¶ 25.  In fact, the Statement of Claim was served on Plaintiff on July 17, 2013, a mere one day after it was filed.  *Id.* at ¶ 26.

# III. ARGUMENT

## A. This Action Should Be Dismissed In Favor of the Pending Canadian Action

### 1. The doctrine of international comity, coupled with this Court's discretion under the Federal Declaratory Judgment Act, supports dismissal of this Action in favor of the pending Canadian Action

Under the principle of international comity, federal courts may dismiss a case in deference to a foreign country's legal and judicial system of handling disputes over which it has jurisdiction. *Paraschos v. YBM Magnex Int'l, Inc.*, 130 F. Supp.2d 642, 645 (E.D.Pa. 2000). Indeed, "in some private international disputes the prudent and just action for a federal court is to abstain from the exercise of jurisdiction." *Turner Entm't Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1518 (11th Cir. 1994).

When evaluating whether to refrain from exercising jurisdiction based on the principles of international comity, "a district court should decline to exercise jurisdiction under certain circumstances in deference to the laws and interests of another foreign country." *Paraschos*, 130 F. Supp.2d at 645. Such deference "fosters international cooperation and encourages reciprocity, thereby promoting predictability and stability through satisfaction of mutual expectations." *Id.* at 645 (quoting *Spatola v. U.S.*, 925 F.2d 615, 618 (2d Cir. 1991)). Indeed, "United States courts ordinarily . . . defer to proceedings taking place in foreign countries, allowing those . . . proceedings to have extraterritorial effect in the United States." *Id.* at 645 (citing *Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru*, 109 F.3d 850, 854 (2d Cir. 1997)). In fact, the Third Circuit has repeatedly ruled that "[c]omity should be withheld only when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect." *Phila. Gear Corp. v. Phila. Gear de Mexico, S.A.*, 44 F.3d 187, 191 (3d Cir. 1994) (citing *Somportex Ltd. v.*

*Phila. Chewing Gum Corp.*, 453 F.2d 435, 440 (3d Cir. 1972), *cert. denied*, 405 U.S. 1017 (1972)).

The threshold inquiry as to whether or not to defer to a foreign proceeding is determining if the two actions are considered "parallel" actions. *Hay Acquisition Co., I, Inc. v. Schneider*, 2:04–CV–1236, 2005 WL 1017804, *11 (E.D.Pa. April 27, 2005). The court in *Hay* explained:

> An action is parallel to another action where substantially all the same parties are contemporaneously litigating substantially the same issues in another forum. While the cases are not required to be identical, the issues must be sufficiently similar, in that there must be a substantial likelihood that the [foreign] litigation will dispose of all claims presented in the federal case.

*Id.* (internal quotations and citations omitted).

In the present case, the Agreement and the parties' rights and obligations thereunder are at the center of this action and the Canadian Action, and Plaintiff's claims in this action are encompassed within and will be adjudicated in the more comprehensive Canadian Action. Therefore, this action and the Canadian Action clearly are "parallel" for international comity consideration purposes and dismissal of the present action is appropriate. *See Id.* (actions are parallel for purposes of international comity even where the legal claims were not the same); *Int'l Bus. Software Solutions, Inc. v. Sail Labs Tech., AG*, 440 F. Supp.2d 357 (D.N.J. 2006) (Austrian litigation was parallel for purposes of international comity where it will dispose of the claims before the district court.). In addition, this action is also duplicative for purposes of this Court's discretionary decision whether or not to exercise jurisdiction under the Federal Declaratory Judgment Act. Numerous federal courts have refused to exercise jurisdiction where the federal action would duplicate or overlap another pending action. *See, e.g., Wilton v. Seven Falls Co*., 515 U.S. 277, 282 (1995) (quoting *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 495 (1942)); *Allstate Ins. Co., v. Antoine*, C.A. No. 11-5830, 2012 WL 707069, at *3 (E.D.Pa. Mar.

6, 2012) (citing *Hartford Cas. Ins. Co. v. Am. Recycling Sys., Inc.*, No. 09–3355, 2010 WL 3420046, at *2 (E.D.Pa. Aug. 25, 2010)).

Since the Canadian Action and the present action are parallel for international comity purposes, this Court next must determine whether or not there are sufficient circumstances to warrant dismissal pursuant to international comity considerations, including:

1.  the desirability of avoiding duplicative litigation;
2.  the inconvenience of the domestic forum;
3.  the governing law;
4.  the order in which jurisdiction was obtained in each forum;[2]
5.  the relative progress of each proceeding; and
6.  the contrived nature of the domestic claim.

*Int'l Bus. Software Solutions, Inc. v. Sail Labs Tech., AG*, 440 F. Supp.2d 357, 365 (D.N.J. 2006) (citing *Hay*, 2005 WL 1017804 at *12).  These factors favor dismissing the present action on the basis of international comity in favor of the Canadian Action.

Plaintiff's Complaint contains no breach of contract claims despite the undeniable fact that this is litigation based exclusively on the parties' Agreement and their performance thereunder.  In reality, it constitutes a pre-emptive declaratory judgment attack by Plaintiff in an effort to secure its home forum when confronted with evidence of its multi-million dollar contract breach.  Compounding its procedural maneuvering, the Complaint also purports to assert -- apparently on the theory that the best defense is a good offense -- a vague and conclusory equitable claim for refund of supposed overpayments of its own doing. Courts have not hesitated

---

[2] For purposes of international comity the "first filed" rule does not apply.  Rather, the order of filing and subsequent progression of the foreign and domestic litigation are simply a factor to consider in the international comity analysis. *Hay*, 2005 WL 1017804 at *12.  Even so, while Plaintiff's action was technically filed first, timely service of process was not effected and effective service of process in the Canadian Action was accomplished first by UTI and thus jurisdiction was effectively obtained first in the Canadian Action.

Similarly, in deciding whether to exercise jurisdiction under the Federal Declaratory Judgment Act, courts have held that it is irrelevant whether the federal action was first filed.  *First Mercury Inc. Co. v. Legends, Inc.*, 914 F. Supp.2d 644, 647 (E.D.Pa. 2012) (citing *State Auto Ins. Cos. v. Summy,* 234 F.3d 131, 136 (3d Cir. 2000)).

to refuse to exercise jurisdiction, in a case like this, where a state law claim relating to a party's past conduct has been asserted and that party initiates an action under the Federal Declaratory Judgment Act to obtain a declaration that it is not liable on that claim. *See, e.g., Sun Oil Co. v. Transcontinental Pipeline Corp.,* 108 F. Supp. 280 (E.D.Pa. 1952), *aff'd*, 203 F.2d 957 (3d Cir. 1953) (adopting opinion of district court); *BASF Corp. v Symington,* 50 F.3d 555 (8th Cir. 1995); *Cunningham Bros., Inc. v. Bail,* 407 F.2d 1165 (7th Cir. 1969); *Dow Jones & Co. v. Harrods, Ltd.*, 237 F. Supp.2d 394, 426-27 (S.D.N.Y. 2002). *See also* 10B Charles Allen Wright, et al., *Fed. Prac. & Proced.* § 2758, at 521 (3d ed. updated 2011) ("[I]t is not the function of the federal declaratory judgment action merely to anticipate a defense that could otherwise be presented in a state action."). Indeed, the Third Circuit has made clear that it can be an abuse of discretion for a district court to entertain a declaratory judgment action involving a state law dispute, even where the declaratory judgment action is the first to be filed. *See State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 136 (3d Cir. 2001) ("[D]eclaratory judgments in such cases should be rare.").

While these particular cases relate to pending federal and state court litigation, this is a distinction without a difference for present purposes. The principle that a declaratory judgment action and claim are not proper vehicles to circumvent a more appropriate forum should be equally applicable when the more appropriate forum is a foreign court in a dispute governed by its law. Here, the parties' dispute, as expressly provided in the Agreement, is governed by the law of Alberta and the Canadian court should be permitted to resolve the questions of Alberta law that control this dispute.

Other international comity factors also weigh in favor of the Court declining to exercise jurisdiction over this case. The present action is a subset of the more comprehensive Canadian

Action and dismissing the present action would eliminate duplicative and piecemeal litigation and the risk of inconsistent judgments.[3]

Further, Canadian interests predominate. In fact, prior to serving Respironics with the Statement of Claim, UTI had to apply to the Alberta Court of Queen's Bench for permission to do so. Under Rule 11.25 of the *Alberta Rules of Court*, service of a commencement document outside of Canada requires specific permission. The Canadian Court must be satisfied that there exists a real and substantial connection between Alberta and the facts on which the claim is based. The Canadian Court in the Canadian Action held that there is "a real and substantial connection between Alberta and the facts on which the claims in this [Statement of Claim] are based." Porter W.D.Pa. Dec. ¶ 27. Further, Canadian law provides available causes of action to fashion appropriate relief, and dismissing Plaintiff's action would not be contrary or prejudicial to the interests or public policy of the United States.[4]

Thus, international comity factors, when coupled with the Court's discretion under the Federal Declaratory Judgment Act, demonstrate that Canada has the greater interest in the present action and that this action should be dismissed in favor of the Canadian Action.

### 2. The Doctrine of Forum Non Conveniens supports dismissal of this action in favor of the pending Canadian Action

Where there is a more convenient forum for the dispute outside the United States, federal courts have the power and discretion to dismiss damages actions under the common-law *forum non conveniens* doctrine. *See Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA*, 623

---

[3] *See Hay*, 2005 WL 1017804, (staying action in favor of German parallel proceeding under the principle of international comity in order to avoid duplicative and piecemeal litigation, where allowing both actions to proceed would expose all the parties to inconsistent and potentially enforceable judgments).

[4] *See*, *e.g.*, *Paraschos*, 130 F. Supp.2d at 647 (dismissing securities fraud action related to Canadian corporation because the available relief "under Canadian law by the Canadian courts would be adequate . . . in light of Canada's interests over the case it would make more sense to have such law adjudicate this matter.").

F.3d 147, 163 (3d Cir. 2010) (dismissing district court action in favor of later-filed French action).

In determining whether or not to dismiss a case pursuant to *forum non conveniens*, "the ultimate inquiry is where trial will serve the convenience of the parties and the ends of justice." *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 527 (1947). The court must (1) decide if an adequate alternative forum exists to hear the case; (2) evaluate the amount of deference due to the plaintiff's choice of forum; and (3) consider and balance the private and public interest factors. *Delta Air Lines, Inc. v. Chimet, S.p.A.*, 619 F.3d 288, 295 (3d Cir. 2010) (internal citations omitted); *Windt v. Qwest Commc'ns. Intern., Inc.* 529 F.3d 183, 189-190 (3d Cir. 2008).

Canada is an adequate alternative forum for Plaintiff's claims. Not surprisingly, District Courts in Pennsylvania have recognized that Canada is an adequate alternative forum for a wide variety of claims and causes of action. *See In re Corel Corp. Inc. Secs. Litig.*, 147 F. Supp.2d 363 (E.D.Pa. 2001) (holding that Canada was an adequate alternative forum for securities disputes); *Wilson v. The Canada Life Assur. Co.*, Civil Action No. 4:08-CV-1258, 2009 WL 532830 (M.D.Pa. 2009 Mar. 3, 2009) (holding that Canada was adequate alternative forum for litigation related to life insurance proceeds). There can be no legitimate dispute that adequate and appropriate relief can be achieved in the Canadian Action.

Although the Plaintiff's choice of forum is entitled to some deference, where -- as here -- the central facts of a lawsuit occur outside the forum state, plaintiff's choice of venue is accorded less deference. *Brice v. C.R. England, Inc.*, 278 F. Supp.2d 487, 489 (E.D.Pa. 2003) (citing *Renzetti, Inc. v. Thompson*, No. CIV. A. 96-CV-8520, 1997 WL 230806, *2 (E.D.Pa. May 2, 1997)). The central focus of the present suit relates to the licensing of Canadian-developed

intellectual property pursuant to an Agreement governed by Canadian law. *See* Porter Can. Aff. ¶¶ 29(a)-(m). Furthermore, Plaintiff's preemptive lawsuit clearly is a forum-shopping exercise and, therefore, is entitled to even less deference. *See Bohn v. Bartels*, 620 F. Supp.2d 418, 428 (S.D.N.Y. 2007).

The private and public interests weigh in favor of the Canadian action. In the instant case, the dispute involves the conduct and performance of the two contracting parties, each located in a different country, so that the private interests arguably do not predominate for either side. *See Windt*, 529 F.3d at 194. However, the public interests favor the Canadian Action because the research, technology and intellectual property were developed in Canada and the parties' Agreement mandates that Plaintiff's claims in the action are governed by Canadian law. Thus, the dismissal of Plaintiff's action in favor of the Canadian Action also is appropriate under the doctrine of *forum non conveniens*.

**B.     Plaintiff's Protective Declaratory Judgment Count Is Not Ripe and Therefore Fails to State a Claim Upon Which Relief Can Be Granted**

Count II of Plaintiff's Complaint should be dismissed to the extent it seeks a declaration regarding its obligation to make Royalties payments after the expiration of the "UTI patents licensed under the Agreement." (Compl. ¶ 30(e).) Plaintiff's request for such declaration is premature and, thus, does not state a claim, because the last of the patents will not expire until on or about July 2014 (*i.e.*, 16 months distant at the time of filing of Plaintiff's Complaint) and the language the Agreement makes clear that its Royalties payment obligation may continue well past that date.[5]

---

[5]   Regardless of the ripeness of the dispute, the Federal Declaratory Judgment Act invests the court with discretion to decline to entertain or grant declaratory relief for any number of reasons. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). As previously discussed, this Court separately should exercise this discretion as all issues raised in

### 1. Legal standard for dismissing a declaratory judgment claim

A claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) when the plaintiff cannot prove a set of facts in support of the claim that would entitle it to relief. *Port Auth. v. Arcadian Corp.*, 189 F.3d 305, 311 (3d Cir. 1999).

Under the Federal Declaratory Judgment Act, this Court is empowered with the ability to issue a ruling declaring "the rights and other legal relations of any interested party." 28 U.S.C. § 2201(a). However, Article III, Section 2 of the United States Constitution prohibits federal courts from deciding issues in which there is no "case" or "controversy." *Step–Saver Data Sys., Inc., v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir.1990) (citing U.S. Const. Art. III, § 2). The rationale behind the case or controversy requirement "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Armstrong World Indus., Inc. v. Adams*, 961 F.2d 405, 411 (3d Cir. 1992) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)).

In order for its declaratory judgment action to be considered sufficiently ripe so as to constitute a "controversy," Plaintiff has the burden of demonstrating three things: (1) the adversity of interests between the parties; (2) the conclusivity that the declaratory judgment would have on the legal relationship between the parties; and (3) the practical help, or utility, of that judgment (the "*Step-Saver* Test"). *Step–Saver,* 912 F.2d at 647. The termination of the parties' Agreement and Plaintiff's corresponding duty to make Royalties payments is based on

---

Plaintiff's declaratory judgment Count can be decided and resolved by the Canadian Court in the more comprehensive Canadian Action.

future events and hypotheticals and, thus, at least that portion of the Complaint a declaratory judgment Count and related request for relief should be dismissed for failure to state a claim.[6]

> ## 2. Plaintiff's request for a declaration that it owes no more Royalties payments under the Agreement after the last of the patents expires lacks conclusivity, adversity and utility

Plaintiff's request for a declaratory judgment is premature even under its own theory, as Plaintiff is seeking an advisory opinion on a hypothetical set of facts. A declaratory judgment action lacks conclusivity for these purposes "if it seeks an opinion advising what the law would be upon a hypothetical set of facts." *McKenna v. PSS World Medical, Inc.*, No. 09-0367, 2009 WL 2007116, *3 (W.D.Pa. July 9, 2009) (quoting *Step-Saver*, 912 F.2d at 649). This is because "[a] declaratory judgment granted in the absence of a concrete set of facts would itself be a contingency, and applying it to actual controversies which subsequently arise would be an exercise in futility." *McKenna*, 2009 WL 2007116 at *3 (quoting *Armstrong*, 961 F.2d at 412). The Third Circuit made clear in *Step-Saver* that "[c]onstruing a contract and making law without finding the necessary facts constitutes an advisory opinion writing, and that is constitutionally forbidden." 912 F.2d at 649.

Plaintiff's request for a declaratory ruling that "no royalties will be due under the Agreement . . . upon the expiration of the UTI patents licensed under the Agreement" would not be conclusive. First and foremost, the last of the patents will not expire until July 2014 at the earliest. Neither Plaintiff, UTI nor the Court can predict how the facts relevant to this dispute might change over the next year. Further, Plaintiff's obligation to pay Royalties is dependent on three events, all of which are hypothetical at this juncture. The Agreement provides for three (3) events which all ***must*** occur before the Agreement terminates, and only one of those events

---

[6] As a precaution under the circumstances, UTI included in its Statement of Claim in the Canadian Action a request for a declaration that it is entitled under the Agreement to receive Royalties payments for the entire contract term.

involves the expiration of patents. The Agreement expressly provides that the Agreement will remain in full force and effect until:

> *the last to occur of the following*: (i) the expiration of the last to expire of any Patents; (ii) *the final rejection or abandonment of any pending Patent application*; or (iii) such time as neither the Auto CPAP Technology *nor any Improvements of the foregoing are a material part of any product made or sold by Respironics*.

(Agreement, ¶ 16.0) (emphasis added).

In short, in order for the Agreement to terminate at the time of the expiration of the last of the patents there must be no pending patent applications and neither the Auto CPAP Technology nor any of its associated Improvements can be a material part of any product sold by Plaintiff. As set forth in the Porter W.D.Pa. Declaration, UTI did provide both Improvements and non-patented technology for use with Respironics' products. Porter W.D.Pa. Dec. ¶¶ 3-5. Plaintiff's facially simple request is really a constitutionally impermissible request for this Court to issue an advisory opinion lacking the necessary conclusivity and based on unknown contingencies: *i.e.*, Plaintiff will not owe any further royalties once the patents expire *if* there are no pending patent applications and *if* the patented and non-patented Auto CPAP technology is no longer a material part of any product made or sold by Plaintiff. *See Step-Saver*, 912 F.2d at 649.

Lack of conclusivity alone warrants this Court's dismissal of Plaintiff's request for a declaration that no royalties are owed under the Agreement after the last of the patents expire. Here, however, adversity and usefulness in this context also are lacking and their absence independently justifies dismissal for failure to state a claim. Plaintiff's request is based on a set of facts that has not yet occurred and thus, even under its own theory, its obligations continue under the Agreement until July 2014. *See*, *e.g.*, *McKenna*, 2009 WL 2007116 at *3 (quoting *Armstrong*, 961 F.2d at 411-12).

19

## C. Alternatively, Plaintiff Has Not Adequately Pled Its Purported Equitable Claims In Counts I and III

Plaintiff's Count I for restitution/refund and Count III for unjust enrichment both relate to its supposed past overpayment of Royalties and both are premised on its bald assertion that it "paid more than the agreed-upon royalty under the Agreement to UTI based upon a mistake of fact concerning the amounts due under the Agreement." (Complaint, ¶ 32.) No details as to the dates or supposed dollar amounts of the supposed miscalculations on Plaintiff's part are provided in the Complaint. Such Counts should be dismissed pursuant to Rule 12(b)(6) and Rule 12(e).

Under the Federal Rules all elements of mistake must be plead with particularity. Fed. R. Civ. P. 9(b). Specifically, Rule 9(b) provides:

> In alleging fraud *or mistake*, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b) (emphasis added). In *Bluefield Gas Company v. Abbs Valley Pipeline, LLC*, Civil Action No. 1:09-1497, 2010 WL 4735739, *5-6 (S.D.W.Va. Nov. 15, 2010), for example, the district court granted a motion to dismiss where the count for mistaken overpayment did not "set forth any facts, tender any explanations, or give any account whatsoever of the circumstances of its mistake. Instead, Plaintiff merely allege[d] that it was mistaken, which, without more, appear[ed] to be an unsupported conclusion." *Id.* at 5. The same result is warranted here.[7]

## D. Plaintiff Failed To Serve Process In a Proper and Timely Manner

### 1. Standard of review

"Before a federal court may exercise personal jurisdiction over a defendant, the

---

[7] At a minimum, in the alternative, Plaintiff should be required under Rule 12(e) to re-plead in strict compliance with Rule 9(b).

procedural requirement of service of summons must be satisfied." *Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). Once a defendant challenges, under F.R. Civ. P. 12(b)(5), the adequacy of service of process, the plaintiff bears the burden of establishing that service was proper. *See Clubcom, Inc. v. Captive Media, Inc.,* No. 07-cv-1462, 2009 WL 249446, at *4 (W.D.Pa. Jan. 31, 2009); *Mitchell v. Theriault,* 516 F. Supp.2d 450, 452 (M.D.Pa. 2007) (quoting *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.,* 988 F.2d 476, 488 (3d Cir.1993)) ("[T]he party asserting the validity of service bears the burden of proof on that issue.").

### 2. Plaintiff did not serve UTI in a timely manner

Plaintiff made two attempts at service, neither of which were effective and both of which were untimely. In addition to setting forth how and where service may be accomplished, Rule 4 also specifies when service must be effected. *See* Fed. R. Civ. P. 4(m). Subsection (m) of Rule 4 generally imposes a 120–day time limit upon effecting service of a summons and complaint. *Id.* The general exemption for service in a foreign country set forth in the last sentence of Rule 4(m) does not apply, however, if a plaintiff – as here – has not made a reasonable, good faith effort to serve the foreign defendant abroad within the 120-day period. *Allstate Insurance Co. v. Funai Corp.*, 249 F.R.D. 157, 162 (M.D.Pa. 2008). As admitted in the June 20, 2013 email from Respironics' Mike Hass, Plaintiff knew it had an obligation to at least make a good faith attempt at completing service within the 120 days. Porter W.D.Pa. Dec. ¶ 18.

Despite the fact that Plaintiff filed its Complaint on March 8, 2013, it made no reasonable, good faith attempt to effectuate service within the 120-day time period. Instead, Plaintiff mailed by international registered mail the Complaint and Summons on June 27, 2013, a mere nine days before the expiration of the 120-day period. Not surprisingly, the package was

not received by UTI until July 19, 2013 (fourteen days after the expiration of the 120-day time period). Plaintiff then made a haphazard attempt to effectuate in-person service in Alberta after expiration of the 120-day period. Neither of these attempts was effective, and even if they had been effective, neither was timely.[8]

### 3. Plaintiff's service of the Complaint and Summons was ineffective

As a Canadian business entity, UTI must be served pursuant to Rule 4(h). Rule 4(h), by reference to Rule 4(f), requires that service upon a foreign entity shall be effected "by any internationally agreed means of service that is reasonably calculated to give notice, such as authorized by the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents." Fed. R. Civ. P. 4(f)(1).

Both the United States and Canada are signatories to the Hague Convention; therefore, service of process in Canada must satisfy the Hague Convention's requirements. *See Volkswagenwerk AG v. Schlunk*, 486 U.S. 694, 705 (1988) ("[C]ompliance with the [Hague] Convention is mandatory in all cases to which it applies . . . ."); *Pa. Orthopedic Ass'n v. Mercedes-Benz A.G.*, 160 F.R.D. 58, 60 (E.D.Pa. 1995); *Allstate Ins. Co. v. Funai Corp.*, 249 F.R.D. 157, 161 (M.D.Pa. 2008).

### a. Plaintiff's service of process on a Client Service Coordinator not employed by UTI was ineffective

Plaintiff's July 16, 2013 service of the Complaint and Summons on a Client Service Coordinator for Calgary Technologies, Inc. was not effective, and this Court should dismiss Plaintiff's Complaint. While personal service of process is an acceptable method of service under the Hague Convention and under Alberta Law, there are restrictions under Alberta law on

---

[8] Rule 4(m) indicates that a plaintiff may obtain an extension of time to complete service of process if good cause is shown. *See Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1306 (3d Cir. 1995). Here, there is no evidence that good cause exists or that Plaintiff sought an extension. Therefore the Complaint should be dismissed.

who can accept service of process. A corporation is duly served at its principal place of business under Rule 11.9(1)(a) of the applicable Alberta Rules of Court, only where judicial commencement documents are:

- left with an officer of the corporation who appears to have management or control responsibilities with respect to the corporation (Rule 11.9(1)(a)(i) of the *Alberta Rules of Court*); or

- left with an individual who appears to have management or control responsibilities with respect to the corporation at its principal place of business or activity in Alberta, or at the corporation's place of business or activity in Alberta where the claim arose (Rule 11.9(1)(a)(ii) of the *Alberta Rules of Court*).

Canadian case law considering language similar to Rule 11.9(1)(a)(i) has held that service of a corporation at its principal place of business is not effective if left with a non-employee. *Ontario Rules of Civil Procedure,* RRO 1990, Reg 194, Rule 16.02(1)(c) provides that service of judicial commencement documents on a corporation shall be made "by leaving a copy of the document with an officer, director or agent of the corporation, *or with a person at any place of business of the corporation who appears to be in control or management of the place of business.*" (emphasis added). Ontario Courts have held that Rule 16.02(1)(c) does not allow service "on just any old employee" or any "Tom, Dick or Harry." *Lapoint v. Les Gaz Speciaux M.E.G.S., Inc.*, 2008 O.J. No. 4699 (Ont. SJC). Rather, the plaintiff must show evidence to suggest that the person receiving service on behalf of a corporation was a person who "appears to be in control of management of the place of business." *Id.*[9]

---

[9] *See also Jerge v. Potter and MDC Commc'ns Corp.*, No. 99–CV–0312, 2000 WL 1160459 (W.D.N.Y. Aug. 11, 2000) (dismissing the complaint after the Court determined that service of process on the Defendant's receptionist was not proper under Ontario law because there was no evidence she was ***an officer, director, or agent of the corporation, or with a person at any place of business of the corporation who appears to be in control or management of the business***).

As discussed in the Statement of Facts as well as in the accompanying verified Declarations, Plaintiff attempted to serve UTI by leaving the Complaint and Summons at a multiple tenant building physically housing forty companies with a Client Service Coordinator who was not employed by UTI and who had neither authority nor apparent authority to accept service on behalf of UTI. *See* Watson Dec. ¶ 6; Rutter Dec. ¶ 1. As such, the Complaint also should be dismissed due to improper service of process.

### b. Plaintiff's service of process via registered mail was arguably ineffective

Neither the Third Circuit nor this Court has ruled on whether international service by registered mail, when that mail is not addressed and sent by the Clerk of Court, is effective service. Plaintiff's untimely attempted service by registered mail should be deemed ineffective, at least under the circumstances of the case, because it did not constitute registered mail that was addressed and sent by a clerk of the Court under Fed. R. Civ. P. 4(f)(2)(C)(ii).

The Ninth Circuit, in discussing service by registered mail under the articles of the Hague Convention, noted "[i]t should be stressed that in permitting the utilization of postal channels, . . . the draft convention did not intend to pass on the validity of this mode of transmission under the law of the forum state: *in order for the postal channel to be utilized, it is necessary that it be authorized by the law of the forum state*." *Brockmeyer v. May*, 383 F.3d 798, 804 (9th Cir. 2004) (emphasis added). Thus the inquiry is two-fold: (1) is service via registered mail permitted under Alberta law, and (2) is service on a foreign company by registered mail that was addressed and sent by Plaintiff's attorney permitted under the Federal Rules of Civil Procedure.

Rule 4(f)(2)(A) affirmatively authorizes service of process as "prescribed by the law of the foreign country for service in that country in an action in any of its courts of general

jurisdiction . . . ." Fed. R. Civ. P. 4(f)(2)(A). The Ninth Circuit has read this provision as "not authorizing service by international mail, in part because 'the common understanding of Rule 4(f)(2)(A) is that it is limited to personal service,' and because of 'the explicit mention of international registered mail in Rule 4(f)(2)(C)(ii) . . . and the absence of any such mention in Rule 4(f)(2)(A).'" *Mitchell v. Theriault,* 516 F. Supp.2d 450, 452 (M.D.Pa. 2007) (quoting *Brockmeyer*, 383 F.3d at 806).[10] In accordance with this, some courts "have applied Rule 4(f)(2)(A) to approve **personal** service carried out in accordance with foreign law." *Id.*[11]

Given the Third Circuit's silence on the question of whether Rule 4(f)(2)(A) applies solely to personal service of process, UTI respectfully suggests that the Ninth Circuit's interpretation makes sense, particularly in light of the gamesmanship employed by Respironics in this case. Thus, Plaintiff's belated attempted service by registered mail should be deemed ineffective and its Complaint should be dismissed.

## IV. CONCLUSION

UTI respectfully requests that this Court dismiss in its entirety this Complaint for the reasons set forth above. Alternatively, UTI requests that Plaintiff's declaratory judgment Count II and related requests for relief be dismissed as premature and that Plaintiffs remaining claims in Counts I and III be dismissed without prejudice to be re-pled for noncompliance with Rule 9(b).

---

[10] The Court in *Mitchell* noted that the Ninth Circuit did not actually resolve the question of whether Rule 4(f)(2)(A) pertained only to personal service without first analyzing the law of the receiving country. *Mitchell*, 516 F. Supp. at 456.

[11] While UTI has not located any Third Circuit or Western District of Pennsylvania case which has resolved the question of whether Fed .R.C.P. 4(f)(2)(A) permits service via international registered mail, a number of courts have affirmed the appropriateness of such service under the Hague Convention without specifically addressing and resolving the question of whether Rule 4(f)(2)(A) only applies to personal service. *see e.g., Guy Carpenter & Co. v. Samengo Turner*, No. 07-Civ. 3580, 2007 WL 1705070 (S.D.N.Y., June 14, 2007); *Taft v. Moreau*, D.C.Vt.1997, 177 F.R.D. 201 (use of registered mail to transmit summons and complaint to defendants in Quebec complied with Hague Convention, Federal Rules of Civil Procedure).

Dated:  September 3, 2013                 BUCHANAN INGERSOLL & ROONEY PC


By:  _/s/ Kevin P. Lucas_____
      Kevin P. Lucas, Esquire
      Pa. I.D. No. 25596
      Patrick R. Malone, Esquire
      Pa. I.D. No. 206479
      Firm #038
      One Oxford Centre
      301 Grant Street, 20th Floor
      Pittsburgh, PA 15219
      Tel:  (412) 562-8800
      Fax:  (412) 562-1041
      *kevin.lucas@bipc.com*

      Counsel for Defendant

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on September 3rd, 2013 the foregoing **Memorandum of law in Support of Defendant's Motion to Dismiss the Complaint** was served via CM/ECF System of the United States District Court for the Western District of Pennsylvania upon the following:

H. Woodruff Turner
K&L Gates
K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania 15222

*Counsel for Plaintiff Respironics, Inc.*

DATE: September 3, 2013                     <u>/s/ Patrick R. Malone            </u>